Good morning, your honors. Kuczynski, Tolman, and Pearsall. Roger Siegel on behalf of the appellant Felix Lemus-Rodriguez. I'd like to reserve two minutes for rebuttal. Okay. This is one of the rare cases, at least in our district, where the district court ruled that the defendant established a prima facie case for duress and did not preclude that defense, which is usually the case. This appeal centers around four main issues. Counsel, I thought Judge Jorgensen declared that it was an imperfect self-defense. No, that's what she decided at sentencing. Pre-trial, the government filed, and it was extensive litigation over whether the duress defense, the defendant had established a prima facie case for duress. She didn't. In other words, it entitled the government to go with the duress defense, that there was enough prima facie case of each element for the duress defense, which otherwise And then she gave instructions on duress, right? Correct. Correct. And your argument is she should have used 9.6 instead of 9.8? That was one of the arguments, correct. Okay. So I'm missing something here. Maybe I'm not understanding what you're saying. I was just introducing the case, Judge. Okay. All right. Each of the issues revolved, affected to some extent or were related in a major way to the duress defense. I think the most substantial three issues were the trials, as the Court noted, the trial court's failure to instruct on model instruction 9.8 as required by Salazar-Gonzalez. Let's talk about that, because the only — I don't see a difference — a distinction that makes a difference there. I see that one of them breaks the elements out into five separate elements, but your argument is that there's somehow a difference in interpreting the words knowingly and voluntarily by breaking them out into separate paragraphs, as opposing to having them in the same paragraph. And I don't understand why that makes a difference. Under — under Supreme Court law, obviously, Gowden and Winship, the government has the burden of proving each and every essential element. The instruction starts by saying that the government has the burden of proof to prove the following elements beyond a reasonable doubt. And then it says first, second, third. That's what 9.6 has. In the second element, it combines — I would call a mismatch of different things, which is combined into one element. Well, it doesn't have to — the Supreme Court cases don't require that you have a PowerPoint. In other words, even if they don't happen to list five as opposed to four, if the elements are still there, it still is adequately advising of what you have to prove, doesn't it? I think the problem is that by putting the — by prefacing the instruction by saying the following elements, and when you include two or three of the elements as one element, that presents the problem, because that dilutes and hides from the fact — from the jury the fact that they are each separate element. But they're listed in the conjunctive. It says second, thereafter the defendant knowingly and voluntarily reentered the United States. So how is the jury going to be confused — Knowingly, voluntarily — Let me finish the question. I'm sorry. In not understanding that they have to find both that he did so knowingly and voluntarily. Knowingly and voluntarily without the consent of the appropriate government officials. Which he conceded. There's no — And I'm paraphrasing. Correct. So my argument, and I think it's a very strong one, is that where you include in one what the instruction specifies is an element by the way it prefaces it, the following elements, one, two, three, that the jury does not — does not take each of those, even if they're conjunctively worded, as separate elements. So they could find — a jury that's not educated in law, and if they're just reading the instruction, could easily just assume that what that instruction requires, that the person didn't get the consent or apply for the consent of the attorney general or his representatives, and it does not require a separate finding beyond a reasonable doubt as to each of those elements. You've just written out of that second paragraph in 9.6 that the jury had to find that he knowingly and voluntarily reentered. But the preface to that is the following elements, and then it lists one, two, and three, which is specifically why the Salazar-Gonzalez case said that it wasn't sufficient in a found-in case that knowingly and voluntarily had to be included in the — had to be listed. And then the commission went ahead and said — and citing Salazar-Gonzalez said, in fact, in found-in cases, these are the elements that have to be instructed on. But wasn't the whole thrust of the defense, that trial, that he entered under duress because of what had happened to him in Mexico? Correct, and that — So how could the jury have been confused by this instruction in determining whether or not that duress overrode the illegal reentry? In fact, the jury's — after two hours, the jury's only question before coming back was on the voluntariness. So the jury was focused on exactly the issue that you wanted them to be focused on in considering your defense. That's how I interpret the jury question. But they were confused. They were confused by it. And it shows that they didn't understand. To them, my reading — obviously, this is just my inference. My reading of that is that the jury saw the duress defense and they didn't — and they saw the voluntariness and that they simply didn't understand how you could require voluntary, how the two sort of could be — how the two needed to be related. And my belief is that if the court had instructed separately on voluntary and on knowing, as I believe is required, then the jury would have realized that it was a separate element. But without realizing — So what was the court's response to the jury's question after conferring with counsel? My memory of the court's response was a general rely on the prior instructions that were given. And wasn't that because — were you trial counsel? Yes. And wasn't that because you told the court that you didn't want the court to say anything more to the jury about what voluntarily meant? Both parties and the court did — both parties and the court did — both parties and the court did agree that instructing on the definition of voluntariness at that point when they had not received it earlier would be more confusing than helpful. But why shouldn't we invoke the doctrine of invited error in response to your argument? Because throughout, I requested the separate — the separate instruction — But you had the opportunity at that point to say, Your Honor, I would like you to reconsider the instruction that I previously proposed. But instead, you said, No, don't say anything more. Just tell them, rely on the jury instruction. Well, I don't believe the jury — the jury was not — the jury was not asking about what are the elements. The jury asked specifically about a definition of voluntariness. The problem that I had with — candidly, with — with instructing them on the definition of voluntariness is I think that the voluntariness as it's traditionally been defined would tend to suggest that — that perhaps his — his — his actions were voluntary, whereas I believe a good faith and reasonable inference from the instructions that were given were that because he was — he was acting out of duress and because he felt he had no choice, that was not a voluntary action. I think that — But why didn't you propose that when the Court said, What do you want me to say to the jury in response to this question? Because the — I don't think that — are you asking me in terms of the invited error issue? Well, I mean, I'm trying — you know, you went along with the stock answer that we sometimes give, which is just rely on the rest of the instructions. We're not going to tell you anything more, but you've just given me some language that you could have proposed to the trial judge to say, Oh, Your Honor, I think you should tell the jury in response that they should consider whether or not, if they find that he acted out of duress, that it undermines the notion that he voluntarily reentered illegally. Well, I don't think I could have in good faith argued that because I don't think the case law supports that. But I do think that the — I do think that what I was trying to say was that there's a reasonable — my argument in closing argument was that because of the coercion, that his conduct should not be considered voluntary. And I chose not to request, and neither did the government request, an instruction on voluntariness because the — sort of the stock instruction on voluntariness tends to talk about, you know, persons being — airplanes being stopped midair because they're out of gas and they have to stop in the United States, or someone being paroled into the United States, and they had absolutely no choice in the matter. Technically, Lemus Rodriguez had a choice in the sense that he put one foot in front of the other, but with respect to whether he felt like he had a choice vis-a-vis whether he could live or die, that was not voluntary. And that was my argument to the jury, and I think it was one that, by giving nine-point six instead of nine-point eight, diluted the burden of proof. I don't know if the Court's interested in — I think there were two other issues that were fairly strong that I would like to get to. The Court's — the Court's ruling on the — on the 404B issues was, I think, a very strong argument that I think it was unequivocally — unequivocally did not follow the — it was not an exercise of discretion. The courts have always said that in order to exercise a proper exercise of discretion is the court has to do a 403 balancing. The court did not do any 403 balancing on the 404B evidence of the defendants, all of the defendants' prior entries, deportations, and specifically did not have — it reflected that it did not have any understanding of what the specific bad acts or the evidence that the government was proposing would — would be. The Court said something to the effect — and I'm looking sort of for the quotes — but the Court said — if I have one second. No, you're actually three minutes into overtime. What's that? You're actually three minutes into overtime. Oh, I'm sorry. I'm reading it wrong. But the Court basically said — If you put your laptop on the other side, you can actually see the clock. Excuse me? If you put your laptop on the other side, you can actually see the clock. Thank you, Your Honor. Good suggestion for the future. Anyway, you are out of time at this point. Thank you. Why don't we hear from the government? May it please the Court, Caroline Nutter on behalf of the United States. Your Honors, I'd like to begin first by asking this Court to affirm the conviction of Lemus Rodriguez for illegal reentry. You discussed a great deal the jury instructions with Defense Counsel. I'd like to speak first of all about Salazar-Gonzalez. In the Salazar-Gonzalez case, first of all, even in that case where they determined there was error in the instruction that was given, the Court found that that error was harmless. In this case, there was not error in the instruction that was given. As the Court has noted, the jury instruction did contain all of the elements. Salazar-Gonzalez and the analysis therein spoke primarily to what is a general intent crime and said that for a general intent crime, the government does have the burden of showing that somebody was willful and knowing in their actions. Or in the case of an illegal reentry or a case where somebody is found in the United States after deportation, what the government needs to show is that they had knowledge they were in the United States and that entry was voluntary. I would take a moment to suggest that what Defense Counsel is doing is conflating the idea of voluntariness with the idea of coercion and duress. And that is something separate from the government's burden. That is a burden that the defense then has when he raised the duress defense by preponderance of the evidence. In this case, the Court did give an instruction in which the jury was told and instructed that the duress can defeat voluntariness, right? I'm sorry, Your Honor? If a showing of duress is made, that can defeat voluntariness. Your Honor, it doesn't necessarily defeat voluntariness. A duress defense can say that although every element of the crime was done, including the voluntariness, there is an excuse, there is a legally acceptable excuse for what I did. Now, in some instances, yes, Your Honor, a showing of duress can defeat voluntariness. I would give the example, and what we do not have in this case, of somebody who has a gun to their head and they are being told, you will step over that line, you will go into the United States. In that case, yes, duress could defeat voluntariness. In this case, the defendant himself admitted that he knew he was in the United States, and that's ER 2, page 162. He also admitted that no one was holding a gun to his head at this time. That's ER 2, pages 163 to 164. He admitted on his cross-examination that he contacted people to be able to cross into the United States, and that he paid a fee for crossing into the United States, and that there was planning for this. All of which goes to the idea of whether or not what the defendant did was voluntary. And as I mentioned, that he paid a fee. I'm sorry, I'm not understanding. You said duress can defeat voluntariness, and you said if you got a gun to your head, that can defeat, you know, the juror believes that. Yes, Your Honor. What if the gun is two inches from your head? I would suggest, Your Honor, that that too— Let's not have a big discourse here. Let's just say yes or no. Come on. Yes, Your Honor. I've got a lot more questions like that. I'm going to make that gun go much farther. Yes, Your Honor. Two inches is okay? Yes, Your Honor. Okay. Guy standing behind you, a foot. Yes? Yes, Your Honor. Okay. What if the gun comes to you and says, you know, I'm going to send out somebody to kill you tomorrow? Your Honor, I would submit that yes, that also could be a duress that defeats voluntariness. So how is that different from this case? I mean, even if they use the 24 hours in between, you say, well, a guy's going to come kill me, so I've got to make arrangements. You know what? I can't get a visa in the United States because, you know, whatever, I can't get a visa, so I'm going to make other plans. I'm going to have to pay a—you know, make arrangements. All the things you've said, right? But if I don't do those things, I'm still in Mexico 24 hours from now. Somebody's going to come, and I know they're pretty serious in Mexico about people get killed all the time over this kind of thing, right? Yes, Your Honor. And it's not a myth. This is not something from the movies. It happens on a regular basis that people do get killed. Yes, Your Honor. So all the stuff you do in between to make arrangements to leave can't really count against you, right? Well, Your Honor— Just, you know, all the stuff you explained that he did. I think in this case it can count against you because there's not the immediacy of that threat, and that was something the government did argue to, first of all, the court. That's a jury issue. That is a jury issue, Your Honor. And shouldn't the jury be properly instructed on that? And, Your Honor, the jury was properly instructed. They were told that the government had the burden, a burden that the government told the jury it firmly embraced a proof beyond a reasonable doubt as to the voluntariness. The jury was also properly instructed as to the three elements that were necessary to be approved by the defense by a preponderance of the evidence. Not only was the jury properly instructed on those elements as to both the government's preponderance of the crime, but also properly instructed as to the duress defense. But they also had lengthy discussion as to what is the difference between the responsibility of proving a case beyond reasonable doubt as well as the lesser burden, and the jury was specifically told it was a lesser burden that the defendant carried in proving his duress defense. Let me ask you about something else. What about the 403, 404B, 609 questions? It looked to me like there was no 403 balancing on the record in the case. Your Honor, I believe that Judge Jorgensen did indeed do a 403 balancing. She put on the record that she had considered the different elements. And I'm fine for the Court. I know that one of the issues that was brought up as far as both the 403 and the 609 is that these prior convictions were not sanitized. I did want to also address that they were not sanitized because the defendant specifically asked for them not to be sanitized. That's in ER 3, pages 92 to 93. Well, not asking to be sanitized isn't the same as having a 403 balancing. And another thing with regard to that, there was one conviction was more than 10 years old. That requires a special showing. There was no mention even of that. It looked like trial judge wasn't particularly aware of what the convictions were and when they were. And there was surely no special attention paid to a more than 10-year-old conviction that came in. Your Honor, although that certainly did appear to be the case in the motions hearing when the first determinations were made about whether or not the duress defense would open up the government's ability to go into 404B and 609, the Court following the trial did make additional findings in which she found that any prejudicial effect of bringing those in was outweighed and that it outweighed any prejudice for the purposes of impeachment and for use by the government. That's ER 4, page 194, I believe. Are you referring? My transcript is, I think, I have ER 82 through 85, where she did the 609 balancing. Your Honor, you are actually correct. I just realized that I looked above instead of below my notes, so allow me to please correct what I said. It was ER 2, pages 85, I'm sorry, 83 to 85, where there was This is volume 2 of the ERs? That is correct, Your Honor, and that was an additional record. What number? This is the Bates number on the bottom? Yes, Your Honor, it's the Bates number on the bottom, page 83 through 85. And what specifically there? Where the district court Which lines? I'm sorry, where the district court had a discussion in which she made her additional record on Rule 403. I asked for a line number, you give me a description. Sorry, Your Honor. Which means I have to go in chasing it, okay? So I asked for a line number, a page number, you come back with two numbers. One of them is a page, the other one is a line. I'm sorry, Your Honor, I have the page number noted. I don't have the line number noted. Well, look it up. Do you have it? Yes, Your Honor. Go get the excerpts and look it up. Next time you'll take it to the bench with you, right? Yes, Your Honor. At least you have the actual excerpts. Sometimes people boot up their computers when we ask that question. As to the record on... Just page and line. I'm sorry. We don't need an introduction. Just page and line. Two numbers. Page 85, Your Honor. Line? Line 6 through line 17. Okay, I'm looking at it. Okay. Okay. We'll ask the court counsel about it. Counsel, Judge Pierce, I'll ask you about the 10-year-old conviction. Am I correct that if you look at page 83, lines 9 through 19, it addresses the court's balancing of even the conviction that was older than 10 years? Yes, Your Honor. You are correct in which the court does address that under Rule 403 and 409. Okay. Thank you. Thank you, Your Honors. If the court has no further questions for me, I will just ask that you affirm the convictions and go be seated. Thank you. You're out of time, but if you want to take a minute for rebuttal, go ahead. Do you have those excerpts pages that counsel pointed us to? You may want to address that. Put your laptop there. You're going to obscure the... You're not going to be able to see the clock again. Thank you. Judge, the comments by the court at the end of the trial does not obscure the fact that the court didn't give at any time individual consideration to each of the acts. I'm sorry. You're talking about the end of the trial being these pages to which counsel has pointed? Correct. That discussion does not obviate the fact that and does not suggest the fact that the court evaluated each and every both... Why not? 609 conviction, because there's no indication that she even applies the first in terms of 609, that she applies a different standard to the 609 for the 10-year conviction. Second, with respect to the prior bad acts, there was no ruling, possible ruling by the court pretrial and when the trial was in session with respect to the prior bad acts on the certain specific bad acts, specifically the facts of how the defendant had entered into the country, that he had done so following the same route through Sassabee, that was never, those acts were never, were never discussed by counsel prior to them being admitted. The court had asked that the counsel approach sidebar prior to seeking admission to those, to any of the 404 evidence. Counsel admits that that was forgotten, but there's nothing in the pleadings. That's not right, counsel. Do you have your transcript in front of you? Look at ER 91 and 92 where at sidebar the court talks about it and then she specifically says at 92 line 13, I'll make a further record later, and then she goes on to rule on the admissibility. I'm sorry, of what? 92, ER 92, line 13. Which volume? I assume. Volume 2. 2. I don't see that on volume 2. Maybe it's volume 1. I can't tell. All I have is the ER, the page stamped ER 92. So maybe it's 1. But it's the trial transcript and it's the transcript of the sidebar where this issue arose on examination of your client. I believe all the court was doing was say, I believe that those were pretrial hearings if I'm not mistaken. I'm not sure. But I believe what the court was doing was that she. You don't usually call a bench conference in the middle of a pretrial motion in limine. No. Unless I'm reading this transcript. The government in its answering brief admitted that it did not approach, it did not, it forgot to approach sidebar prior to getting into the 404B evidence. Counsel admitted that. And there was never any discussion ever about specific facts of the prior entries. That was hugely important because the purpose for admission of the prior bad acts, especially the prior entries, was ostensibly as to intent and motive. But, in fact, the government used those prior bad acts to suggest not intent and motive, but the defendant felt comfortable and felt comfortable in Sasseville because that's the way he had gone before. And, therefore, the immediacy of the threat wasn't there. And, therefore, there were alternative, reasonable alternatives that he could have followed, such as staying in Sasseville, nothing having to do with the intent or his motive, but rather the other two requirements of duress. Thank you. Thank you. It is volume one, by the way, not volume two. Thank you. Case is argued. We'll stand submitted.
judges: Piersol, Kozinski, Tallman